IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY J. SILVER                    *

        Plaintiff             *

         vs.                  *   CIVIL ACTION NO. MJG-16-382

WELLS FARGO BANK, N.A., et al.  *

        Defendants           *

*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER

The Court has before it Defendants' Motions to Dismiss [ECF Nos. 17 and 18] and the materials submitted relating thereto. The Court finds a hearing unnecessary. As discussed herein, the Court shall grant the instant motions but permit Plaintiff to file an Amended Complaint.

I.   BACKGROUND

At times allegedly relevant hereto,[1] Plaintiff, Jeffrey J. Silver ("Silver") was the victim of a check fraud scheme perpetrated by one of his employees. The scheme involved the preparation of fraudulent checks drawn on Silver's checking account at PNC Bank, National Association ("PNC") and deposited in the employee's account at Wells Fargo Bank, National

---

[1]   The Complaint is, in many respects, imprecise as to the timing of various matters.

Association ("Wells Fargo").[2]

In this lawsuit,[3] Silver asserts claims against the Banks in nine Counts.

Count I:      Lack of Ordinary Care and Good
              Faith – Violation of Maryland
              Code, Commercial Law Article
              §§ 3-404, 3-405, 3-406

Count II:     Breach of Presentment Warranties
              – Violation of Maryland Code,
              Commercial Law Article §§ 3-417,
              4-208

Count III:    Breach of Contract

Count IV:     Negligence as to PNC

Count V:      Negligence as to Wells Fargo

Count VI:     Strict Liability – Violation of
              Maryland Code, Commercial Law
              Article §§ 3-403, 4-401

Count VII:    Negligent Hiring and/or
              Retention of Employees

Count VIII:   Constructive Fraud

Count IX:     Civil Conspiracy.

[ECF No. 2].

---

[2]    PNC and Wells Fargo are, collectively referred to as "the Banks" or "Defendants."

[3]    Silver filed the instant suit against the Banks in the Circuit Court for Baltimore County, Maryland on November 23, 2015.  The case was properly removed to the U.S. District Court for the District of Maryland on February 10, 2016, pursuant to 28 U.S.C. § 1332. [ECF No. 1].

By the instant motions, the Banks seek dismissal of all claims pursuant to Rule[4] 12(b)(6).

## II.   DISMISSAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]."  Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'"   Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"   Id.

---

[4]   All "Rule" references herein are to the Federal Rules of Civil Procedure.

(quoting Twombly, 550 U.S. at 557).  Thus, if "the well-pleaded

facts [contained within a complaint] do not permit the court to

infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'show[n]' – 'that the

pleader is entitled to relief.'"  Id. (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

Generally, a motion to dismiss filed under Rule 12(b)(6)

cannot reach the merits of an affirmative defense.  Goodman v.

Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).  It is

possible to evaluate such a motion, however, if all the facts

necessary to the affirmative defense are clearly alleged on the

face of the complaint.  Id.  But if the complaint does not

clearly reveal the existence of a meritorious affirmative

defense, it is inappropriate for the court to consider it under

a Rule 12(b)(6) motion.  Richmond, Fredericksburg & Potomac

R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).

III. DISCUSSION

    A.   Factual Allegations[5]

At times relevant, Silver, a Baltimore City attorney

employed as a legal assistant, Ms. Katherina Cheek[6] ("the

Assistant").  For "several years," the Assistant stole

---

[5]   The "facts" herein are as alleged by Plaintiff and are not
necessarily agreed upon by Defendants.
[6]   f/k/a/ Katherina Young.

4

"hundreds" of Silver's blank checks and made them payable to herself, unidentified fictitious payees, friends, and her creditors.  ¶ 8 [ECF No. 2].[7]  The Assistant forged Silver's signature as the drawer on the checks, and she forged the payee's indorsement on "the majority" of the checks so that she could cash or deposit them into her personal bank account at Wells Fargo.  Id.  The checks were often presented two or three at a time, contained no commercial stamp even though some were allegedly made out to commercial businesses, and were payable to non-account holders.  Id.  At no time did Silver authorize the Assistant to sign Silver's name or indorse any checks.

Wells Fargo, the "depositary bank," accepted the stolen checks and presented them for payment to PNC, the "drawee." PNC accepted and paid the forged checks.

Silver first discovered the check fraud scheme on November 24, 2012, several years after the scheme had started.  Silver asked PNC verbally and in writing to present warranty claims to Wells Fargo for accepting "highly irregular checks" with forged indorsements.  ¶ 12.  PNC refused to do so.   Neither PNC nor Wells Fargo has paid or credited Silver the amounts charged against his account due to the check fraud scheme.

---

[7]   All ¶ references herein refer to paragraphs of the Complaint [ECF No. 2].

B.  <u>Uniform Commercial Code Claims (Counts I, II and VI)</u>

Counts I, II, and VI present statutory claims under Titles 3 and 4 of the Maryland Uniform Commercial Code ("UCC").[8]  The UCC governs negotiable instruments, including checks, and the relationship between banks and customers.  <u>Cf.</u> <u>Lema v. Bank of Am., N.A.</u>, 375 Md. 625, 633, 826 A.2d 504, 508-09 (Md. 2003)("It is undisputed that the UCC applies to commercial transactions in Maryland, including the commercial dealings between a bank and its customer.").

1. <u>Timeliness Defenses</u>

a. <u>Statute of Limitations</u>

Title 3 of the Maryland UCC provides that:

> an action (i) for conversion of an instrument, for money had and received, or like action based on conversion, (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this article and not governed by this section must be commenced within 3 years after the cause of action accrues.

Md. Code Ann., Com. Law § 3-118(g)(2013 Repl. Vol.).  The limitations period for Article 4 claims is the same.  <u>See</u> <u>id.</u> § 4-111.  The UCC does not specify when a cause of action accrues.

The Complaint, filed November 23, 2015, does not allege when the check fraud scheme began, only that Silver discovered

---

[8]    The Maryland General Assembly adopted the UCC and codified it as the "Maryland Uniform Commercial Code — General Provisions." Md. Code Ann., Com. Law § 1-101 (2013 Repl. Vol.).

it on November 24, 2012.  Silver contends that the three-year

limitations period commenced upon his discovery of the scheme

while PNC contends that limitations commenced as to each check

on the date the check was honored.

In Maryland a discovery rule generally applies to civil

causes of action.  Hecht v. Resolution Trust Corp., 333 Md. 324,

334, 635 A.2d 394, 399 (Md. 1994).  However, there are certain

exceptions e.g., Advance Dental Care, Inc. v. Suntrust Bank, 906

F. Supp. 2d 442, 445 (D. Md. 2012)(holding the discovery rule

does not apply to UCC conversion claims).  The Maryland

appellate courts have not determined whether the discovery rule

applies to claims brought pursuant to UCC sections 3-403 to 3-

405 or 4-401.

The Complaint does not adequately allege facts regarding

the limitations issue, including facts regarding the date of

discovery Silver relies upon.  Moreover, parties have not

adequately briefed the issue.

### b.   The § 4-406 Twelve-Month Rule

Section 4-406 of the UCC establishes a customer's duty to

report an unauthorized signature to the payor bank and requires

a customer who receives an account statement to "exercise

reasonable promptness in examining the statement or the items to

determine whether any payment was not authorized because of an

alteration of an item or because a purported signature by or on behalf of the customer was not authorized." Md. Code Ann., Com. Law § 4-406(c). If the customer "does not <u>within 12 months</u> after the statement or items are made available to the customer . . . discover and report the customer's unauthorized signature on or any alteration on the item," then he is "precluded from asserting the unauthorized signature or alteration against the bank," <u>regardless of lack of care by the bank</u>. <u>Id.</u> § 4-406(f)(emphasis added).

PNC claims that Silver received account statements throughout the time period of the alleged check fraud scheme, yet failed to report the unauthorized account activity until November 2012, after the scheme had been ongoing for "several years." ¶ 8. Silver does not respond to this argument in his Opposition.[9] Moreover, the Complaint fails to specify when he gave notice to the Banks, stating only that it was sometime after November 24, 2012. ¶ 17.

c.   <u>Account Agreement (90 day period)</u>

PNC contends that Silver agreed, in his Account Agreement, to shorten the discovery and reporting period from § 4-406(f) from twelve months to ninety days. This type of alteration is

---

[9]   Nor does he response to PNC's contention that the "repeater rule" in § 4-406(d)(2) would bar the UCC claims. The repeater rule applies in cases where the same wrongdoer repeatedly forges the customer's signature or alters instruments. § 4-406(d)(2).

allowed under the UCC.  See <u>Lema</u>, 375 Md. at 635, 826 A.2d at 510("[T]he UCC expressly provides that the effect of its provisions may be altered by agreement.").

Inasmuch as Silver is now on notice of this contention, an Amended Complaint should present allegations refuting the applicability of the Account Agreement and/or specify the claims, if any, that would fall within the ninety-day period if it is held applicable.

### 2. <u>Lack of Ordinary Care and Good Faith - UCC §§  3-404 through 3-406 (Count I)</u>

In Count I Silver presents claims under sections 3-404, 3-405, and 3-406 of the UCC.

Section 3-404, the "impostors" provision, describes scenarios "in which an instrument is payable to a fictitious or nonexisting person and to cases in which the payee is a real person but the drawer or maker does not intend the payee to have any interest in the instrument."  Official Comment 2 to Md. Code Ann., Com. Law § 3-404.

Section 3-405, the "employee fraud" provision, covers cases where an employee who is given responsibility over an instrument makes a fraudulent indorsement, either in the employer's name, if the employer is the payee, or "in the name of payees of instruments issued by the employer."  Official Comment 1 to Md. Code Ann., Com. Law § 3-405.

Both sections 3-404 and 3-405 provide that a bank may be liable if it failed to exercise "ordinary care" when paying or taking a fraudulent check and "that failure substantially contributes to loss . . . ." Md. Code Ann., Com. Law § 3-404. "[T]he person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." Id.[10]

Section 3-406 establishes a comparative negligence scheme. First, it provides that a person who fails to exercise ordinary care that contributes to a forged or fraudulent instrument is precluded from asserting a claim against a bank that paid the instrument in good faith. § 3-406(a). Second, subsection (b) provides that if the bank asserting the preclusion under subsection (a) also failed to exercise ordinary care when paying or taking the fraudulent instrument, then the loss is allocated between both persons. Id. § 3-406(b).

Using these three provisions, Silver contends that the Banks failed to exercise ordinary care and good faith.[11]

---

[10]   Section 3-405 contains almost identical language.
[11]   Wells Fargo also claims that § 3-406 does not create an independent cause of action. The Maryland Court of Appeals has not decided this issue, and other courts disagree on whether § 3-406 creates an independent cause of action. Compare, Wachovia Bank, N.A. v. Fed. Reserve Bank of Richmond, 338 F.3d 318, 325 (4th Cir. 2003); Halifax Corp. v. Wachovia Bank, 268 Va. 641, 654, 604 S.E.2d 403, 408 (Va. 2004); White Sands Forest Prod., Inc. v. First Nat'l Bank of Alamogordo, 132 N.M. 453, 456–57, 50 P.3d 202, 205–06 (N.M. 2002)(all holding that § 3-406 does not

Under the UCC, "ordinary care" means "observance of reasonable commercial standards." Id. § 3-103.  For banks, "reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage . . . ."  Id.  The Official Comment to § 3-405 provides that "[f]ailure to exercise ordinary care is to be determined in the context of all the facts relating to the bank's conduct with respect to the bank's collection of the check," including the names on the account, amount of check, circumstances of account opening, and actions of account holder.  Official Comment 4 to § 3-405; see also Dominion Const., Inc. v. First Nat. Bank of Maryland, 271 Md. 154, 166, 315 A.2d 69, 75 (Md. 1974) ("[W]hat constitutes a breach of 'reasonable commercial standards' must be decided in the context of a specific set of facts.").

The Complaint alleges, in general terms:

---

create an independent cause of action), with Nat'l Union Fire Ins. Co. v. Allfirst Bank, 282 F.Supp.2d 339, 346 (D. Md. 2003)("The plain language of these statutes provides a cause of action for comparative negligence.")(quoting National Union Fire Insurance v. Hibernia National Bank, 258 F.Supp.2d 490, 493 (W.D.La. 2003)).  However, resolution of this issue is not necessary to reach a holding on the motion to dismiss Count I because §§ 3-404 and 3-405 do provide a cause of action for lack of ordinary care as both provisions state that "the person bearing the loss may recover." Md. Code Ann., Com. Law §§ 3-405 — 3-405.

- The check fraud scheme involved "numerous" checks over "several years." ¶ 8.

- The checks bore forged signatures as to both Silver and fictitious payees, and sometimes unauthorized or missing indorsements. <u>Id.</u>

- "Most" of the checks were indorsed with a "scribbled signature without a commercial stamp even though the majority of these checks were written to local commercial businesses (as fictitious payees)."  ¶ 8.

- The checks were "on their face exceedingly suspicious," for no identified reason, other than the fact that some of them were made out to a person other than the Assistant and then indorsed to her. ¶ 24.

- The checks were "known to be high-risk, third party checks payable to a person other than the accountholder" and required manager approval.  <u>Id.</u>

- Wells Fargo violated banking regulations, including the Bank Secrecy Act, 12 U.S.C. § 1951, in some unspecified manner.

The Complaint does not present specific factual allegations regarding the amounts of the checks, the appearance of the signatures, the circumstances about the Assistant's account and her depositing habits, or to whom the checks were made. Although Silver had bank accounts with both Banks, and presumably both Banks had Silver's signature cards, the Complaint presents no specific factual allegations to present a plausible claim that either Bank should have looked at his signature cards and failed to do so, or that the forgery would be evident if the Banks had compared the signatures.

3. <u>Breach of Presentment Warranties – UCC §§ 3-417 and 4-208 (Count II)</u>

Count II asserts that Wells Fargo breached UCC presentment warranties and PNC breached its obligation to present warranty claims to Wells Fargo on behalf of Silver.  The Banks contend that Silver, as the drawer, does not have standing to present a claim for breach of presentment warranty, and that PNC has no legal obligation to bring such as claim for him.

Section 3-417[12] of the UCC states that at the time of presentment, the person obtaining payment or acceptance of a draft makes three warranties: (1) the warrantor is entitled to enforce the draft or obtain payment on behalf of the person entitled to enforce it; (2) the draft has not been altered; and (3) the warrantor "has no knowledge that the signature of the drawer of the draft is unauthorized."  Md. Code Ann., Com. Law § 3-417 (2013 Repl. Vol.).  If the warrantor, which in this case is Wells Fargo, the depositary bank, breaches one of these warranties, the drawee, here PNC, has a cause of action for breach of presentment warranty.

However, this cause of action does not run to the drawer. The Official Comment to the provision states, "[w]arranty to the drawer is governed by subsection (d) and that applies only when

_____

[12]    Section 4-208 contains the same warranty provisions as § 3-417 and "extends its coverage to items." § 4-208.

presentment for payment is made to the drawer with respect to a dishonored draft."   Official Comment 2 to Md. Code Ann., Com. Law § 3-417; see also Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A., 909 F. Supp. 948, 955 (D.N.J. 1995) (holding that presentment warranties under UCC § 3-417 do not run to the drawer).   The drafts in this case were not dishonored, and thus no warranties were made to Silver as drawer.[13]

Silver has failed to identify any legal authority that requires PNC to assert a warranty claim on his behalf.[14]

### 4. Strict Liability - Md. Code Ann., Com. Law §§ 3-403 and 4-401 (COUNT VI)

In Count VI, the Complaint asserts that PNC is liable for honoring the forged checks because such unauthorized checks are

---

[13]   In his Opposition, Silver states that a breach of presentment warranty remedy "is not available to the drawer against the depositary bank. Likewise, a drawer has no cause of action against a depositary bank for conversion for accepting a forged check." [ECF No. 30 at 8].   However, he then takes the opposite position in his argument, saying that a drawer does have a cause of action. He then misstates the position taken by the UCC drafters regarding the decision in Sun 'N Sand, Inc. v. United California Bank, 582 P.2d 920 (Cal. 1978)(holding that warranties can run to the drawer), which the drafters rejected. See Official Comment 2 to § 3-417.

[14]   To the contrary, section 4-406(f), the twelve-month rule provision, states that when the twelve-month rule precludes a claim, "the payor bank may not recover for breach of warranty under § 4-208 with respect to the unauthorized signature or alteration to which the preclusion applies." Id. § 4-406.   Thus, for any checks affected by the twelve-month rule, PNC is actually barred from making a warranty claim against Wells Fargo.

not properly payable under sections 4-401 and 3-403.[15]  A bank

may charge a customer's account only when an item is "properly

payable," meaning "it is authorized by the customer and is in

accordance with any agreement between the customer and bank."

Id. § 4-401.

As stated earlier, this claim presents timing issues, and

may be precluded by the three-year limitations period, the

twelve-month rule under section 4-406, and/or the ninety-day

period allegedly specified in the PNC Account Agreement.

Furthermore, the Complaint does not present specific factual

allegations to present a plausible strict liability claim

against PNC.

Additionally, Wells Fargo argues that Silver has no viable

claim against it because, as the depositary bank, Wells Fargo

did not charge anything against Silver's account.  Silver does

not debate this in his Opposition to Wells Fargo's Motion.


C. Common Law Claims

1. Breach of Contract (Count III)

The basis of Silver's breach of contract claim against the

Banks is that they failed to verify the signatures on the

---

[15]    Section 3-403 simply designates that "an unauthorized
signature is ineffective except as the signature of the
unauthorized signer in favor of a person who in good faith pays
the instrument or takes it for value. An unauthorized signature
may be ratified for all purposes of this title." Id. § 3-403.

fraudulent checks by comparing those signatures to his signature cards on file with both Banks.  As to PNC the Complaint states that the "Rules and Regulations for Deposit Accounts" created a contract wherein PNC agreed that "it would only honor checks that were signed by an Authorized Signer as listed on the Signature Card." ¶ 32 [ECF 2].

To succeed on a breach of contract claim, a plaintiff must allege that the defendant owed a contractual obligation and that this obligation was materially breached.  RRC Ne., LLC v. BAA Maryland, Inc., 413 Md. 638, 655, 994 A.2d 430, 440 (Md. 2010). Plaintiffs must "identify or describe the nature of an actual, existing contract" and "provide more than 'skeletal factual allegations accompanied by nothing more than mere conclusions and general averments of a breach of contractual duty.'" Economides, 155 F. Supp. 2d 485, 489 (D.Md. 2001)(quoting Continental Masonry Co., Inc. v. Verdel Construction Co., Inc., 279 Md. 476, 481, 369 A.2d 566, 569 (Md. 1977)).

The Complaint does not allege facts establishing the existence of specific contractual obligations that the Banks breached.  For example, the Complaint merely states that Wells Fargo had access to Silver's signature card but does not allege facts to establish that a contract existed that required Wells Fargo to verify his signature on a check drawn on another bank

and deposited by a third party.[16]   Nor do the Complaint

allegations facts give rise to any other type of contractual

breach or breach of ordinary care.

### 2. Negligence (Counts IV - V)

Silver asserts common law negligence claims against both

Banks.   Wells Fargo and PNC argue that Counts IV and V must be

dismissed because (1) the UCC displaces a common-law negligence

cause of action, (2) Silver failed to allege facts to show that

the Banks either owed or breached a duty of care, and (3) as to

PNC, the claim is precluded by the twelve-month rule and/or the

Account Agreement.

Silver contends that the UCC has not replaced common-law

negligence in Maryland.   Section 1-103(c) of the Maryland UCC

provides that the common law can supplement the UCC "[u]nless

displaced by the particular provisions of the Maryland Uniform

Commercial Code."   Courts in Maryland and elsewhere have held

that "common-law negligence claims can proceed only in the

absence of an adequate U.C.C. remedy."   Advance Dental Care,

---

[16]   Although, Maryland courts have found that a signature card
can constitute a contract between a bank and its customer in
certain circumstances, Lema, 375 Md. at 639, 826 A.2d at 512
("Thus, the signature cards, along with the Deposit Agreement,
constitute the contract between Lema and Bank of America.");
Kiley v. First Nat'l Bank of Maryland, 102 Md. App. 317, 326-27,
649 A.2d 1145, 1149 (1994)(finding that a signature card
constitutes a contract between a bank and its customer), Silver
has not alleged that a contractual obligation exists.

Inc. v. SunTrust Bank, 816 F.Supp. 2d 268, 270-71 (D. Md. 2011) (citing cases from the Fourth Circuit and other U.S. District Courts that hold the UCC displaced a common law negligence cause of action).  Thus the Court must look to the UCC to determine if a particular provision provides an adequate remedy against Wells Fargo and PNC in this case.

Silver relies heavily on Chicago Title Ins. Co. v. Allfirst Bank, 394 Md. 270, 905 A.2d 366 (Md. 2006), wherein the Maryland Court of Appeals held that a non-customer drawer could maintain a common law negligence claim against a depositary bank. However, the Court in Chicago Title made a narrow holding based upon unique facts that are distinguishable from the instant case.  In that case the Plaintiff title company made a check payable to the Defendant, Farmers Bank, in order to pay off the title loan of the Plaintiff's refinancing customer, Shannahan. Instead of using the check to  pay off the Farmers loan, Shannahan persuaded Farmers to indorse the check and deposit it into Shannahan's personal checking account.  The Plaintiff title company instituted the suit once it later discovered that Shannahan defaulted on the Farmers loan.  The Court found that because this was not a case of "missing or unauthorized indorsements" and there was no evidence of forgery, the "loss in the instant case was indeed caused by events that occurred outside of the check itself, and therefore the UCC loss

allocation rules do not apply to [the title company's] claim.
We look instead to the rules of common law negligence." <u>Chicago
Title</u>, 394 Md. at 289-90, 905 A.2d at 377.

The instant case is distinguishable.  Unlike the checks
deposited by Shannahan in <u>Chicago Title</u>, the checks that
Silver's Assistant deposited were forged and contained
unauthorized indorsements; therefore, the loss was not caused by
"events that occurred outside of the check itself."  This type
of case is contemplated by the UCC's loss allocation rules in
sections 3-404 and 3-405.[17]  <u>Cf.</u>, <u>Sebastian v. D & S Exp., Inc.</u>,
61 F.Supp. 2d 386, 391 (D.N.J. 1999)("The UCC requires a prima
facie presentation of failure to exercise ordinary care and
causation almost identical to what common law negligence would
require. Common law negligence and the UCC cause of action would
necessitate the same legal analysis."); <u>Lee Newman, M.D., Inc.
v. Wells Fargo Bank</u>, 87 Cal.App.4th 73, 84 (Cal. Ct. App.
2001)(finding that UCC's Article 3 loss allocation scheme
replaced a common law negligence action in a case where a

---

[17]    Silver argues alternatively that sections 3-404, 3-405, and
3-406 of the UCC provide a cause of action for comparative
negligence, which contradicts his common law negligence
argument. <u>See</u> <u>Great Lakes Higher Educ. Corp. v. Austin Bank of
Chicago</u>, 837 F. Supp. 892, 896 (N.D. Ill. 1993)("[Plaintiffs]
have other remedies under the UCC which they have alternatively
plead in their complaint, thus showing that a common law action
for negligence is unnecessary and may not be alleged here.").

depository bank failed to exercise ordinary care when taking

checks fraudulently indorsed by the drawer's employee).

### 3. Negligent Hiring and/or Retention of Employees (Count VII)

In Count VII, Silver claims that the Banks breached their

duty to use reasonable care to select and retain employees who

could competently perform banking transactions, which resulted

in bank employees accepting fraudulent checks.

> The tort [of negligent hiring or retention] reflects
> the notion that, "where an employee is expected to
> come into contact with the public[,] ... the employer
> must make some reasonable inquiry before hiring or
> retaining the employee to ascertain his fitness, or
> the employer must otherwise have some basis for
> believing that he can rely on the employee."

Jones v. State, 425 Md. 1, 18, 38 A.3d 333, 343 (Md. 2012)

(quoting Horridge v. St. Mary's County Dep't of Soc. Servs., 382

Md. 170, 181, 854 A.2d 1232, 1237–38 (Md. 2004)).

"Under Maryland law, an employer's liability in this regard

is not to be reckoned simply by the happening of the injurious

event.  Rather, there must be a showing that the employer failed

to use reasonable care in making inquiries about the potential

employee, or in supervising or training the employee."

Economides, 155 F. Supp. 2d at 489–90 (quoting Gay v. United

States, 739 F.Supp. 275, 276 (D.Md.1990))(internal citations

omitted).

The Complaint presents neither specific factual allegations to establish that either Bank failed to use reasonable care in employing or supervising a particular employee does not even identify any particular employee who was supposedly negligently hired.

### 4. Constructive Fraud (Count VIII)

The tort of constructive fraud requires a breach of a legal or equitable duty, which "the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." Ellerin v. Fairfax, Sav., F.S.B., 337 Md. 216, 236 n.11, 652 A.2d 1117, 1126 n.11 (Md. 1995)(quoting Shulton, Inc. v. Rubin, 239 Md. 669, 686, 212 A.2d 476, 486 (1965)). Silver claims that the Banks owed him a fiduciary duty to properly manage his banking affairs and breached that duty by acting carelessly, ignoring suspicious facts, and not preventing the Assistant from cashing fraudulent checks.

While it is true that "Maryland courts generally do not recognize breach of fiduciary duty as a stand alone tort," such a cause of action may be available when money damages are sought. Id. (citing Kann v. Kann, 344 Md. 689, 713, 690 A.2d 509 (1997)). Silver is seeking monetary damages here, and is pleading a breach of fiduciary duty as a basis for his

constructive fraud claim; therefore, Count VIII does not run afoul of Maryland law.

However, the Complaint does not contain facts to establish the existence of an agreement establishing a fiduciary duty between him and either Bank.  See Legore v. OneWest Bank, FSB, 898 F. Supp. 2d 912, 919 (D. Md. 2012) (quoting Parker v. Columbia Bank, 91 Md. App. 346, 369, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992))("Absent 'special circumstances,' the court is reluctant to 'transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship . . . .'"); Taylor v. Equitable Trust, 269 Md. 149, 155, 304 A.2d 838, 842 (Md. 1973)) ("The Court of Appeals has explained that the relationship between a bank and its depositor is . . . broadly defined as being that of a debtor and creditor, the rights of the depositor and the liability of the bank being contractual.").

Furthermore, the Complaint does not comply with the particularity requirement of Rule 9(b).


5.  Civil Conspiracy (Count IX)

In Maryland, "'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff."  Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc., 340 Md. 176, 189-91, 665

22

A.2d 1038, 1044–45 (1995)(quoting Alexander v. Evander, 336 Md.

635, 645 n. 8, 650 A.2d 260, 265 n. 8 (1994)).


IV.   CONCLUSION

For the foregoing reasons:

    1.   Defendants' Motions to Dismiss Under Federal Rule
         of Civil Procedure 12(b)(6) [ECF Nos. 17 and 18]
         are GRANTED.

    2.   The Complaint [ECF No. 2] is dismissed.

    3.   Plaintiff may, by January 15, 2017 file an
         Amended Complaint, bearing in mind the instant
         discussion.


SO ORDERED, this Tuesday, November 29, 2016.


                          _____/s/_____
                             Marvin J. Garbis
                         United States District Judge